UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

    5K CAR STORE, INC
    A New Mexico Corporation
    EIN: 27-1246229                                                 Case No. 17-11456-t11
        Debtor.

## DEBTOR'S EMERGENCY MOTION TO AUTHORIZE USE OF CASH COLLATERAL

**COMES NOW**, the Debtor-in-possession in the above-captioned Chapter Eleven proceedings, 5K CAR STORE, INC., by and through its counsel of record, ALBUQUERQUE BUSINESS LAW, P.C (James T. Burns III) and hereby moves this Court for an Order, pursuant to 11 U.S.C. §§105, 363 and Rules 4001(b), 6003, and 9014 of the Federal Rules of Bankruptcy Procedure, for authority to use cash collateral during the period beginning upon filing of the initiating documents in the above-captioned proceeding and/or entry of an Interim Order and running through the date that a final order is entered herein ("the Interim Cash Collateral Period") granting Debtor continuing authority to use cash collateral pursuant to a separate hearing for continuing authority as requested herein, and (2) requests the Court to enter a Preliminary Order and/or schedule a preliminary hearing hereon on expedited basis, pursuant to F.R. Bankr.P. 4001(b)(2), and as grounds would show:

### JURISDICTION AND VENUE

**1.** This Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

**2.** On June 2, 2017, the above-named Debtor filed a voluntary petition for

relief under Chapter 11 of the Bankruptcy Code and is operating as Debtor-in-possession of its estate.

3. The Debtor has continued the management and operation of its business and properties as a debtor-in-possession, and intends to continue to do same, pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been appointed in this case, and no official creditors' committee has been formed as of the date hereof.

4. Debtor will incur various expenses in the ordinary course of business and expenses arising from this proceeding, all of which must be paid timely in order to continue operations and in order to maintain and preserve the assets of the bankruptcy estate.

5. If Debtor is unable to obtain authorization for immediate use of cash collateral, then it will be unable to pay the ordinary and necessary operating expenses to continue business operations. In that event, the Debtor will certainly not be able to continue to satisfy its contractual obligations to customers, vendors, and contractors and will therefore be unable to reorganize.

6. If the business is not maintained it will diminish in value, which will necessarily threaten the security interest of certain creditors. Moreover, all creditors would also be subject to harm because the loss of business would diminish the Debtor's capacity to satisfy or compensate any creditors under a plan of reorganization.

7. Upon any cessation of operations, the "going concern" value of the business will be lost. Further, if such "going concern" value is lost or impaired, the marketability of the business, components of the business, and assets will also be impaired.

8. If the business loses value, then the secured creditor(s) and the unsecured creditor(s) are much less likely to ultimately be the beneficiaries of a confirmed plan. In

fact, the largest secured creditor and seemingly the only cash collateral claimant. Thus, both the Debtor and the relevant creditors will suffer actual and substantial injuries if the Court does not grant interim and final authorization for the use of funds to support the Debtor's operations.

9. In accordance with the foregoing statement and as further substantiated in this motion, including the identification of the terms of use, purposes for use, and interested parties; pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure, the Debtor pray for an Order authorizing the interim and continuing use of Cash Collateral in order to pay pre-and-post petition obligations for utilities, key vendors, tax obligations, contract employee payroll, and other expenses incurred in the ordinary course of business operations.

## OVERVIEW OF CASH COLLATERAL

10. The Debtor' use of property of the estate is governed by section 363 of the Bankruptcy Code, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

11. A debtor in possession may not use "cash collateral" without the consent of the secured party or authorization by the court, which must first examine whether the interest of the secured party is adequately protected. 11 U.S.C. § 363. Section 363 defines "cash collateral" as cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents, whenever acquired, in which the estate and an entity

other than the estate have an interest. It includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a creditor's security interest.

12. When "cash collateral" is used (spent), the secured creditors are entitled to receive additional protection under section 363 of the Bankruptcy Code. The debtor in possession must file a motion requesting an order from the court authorizing the use of the cash collateral. Pending consent of the secured creditor or court authorization for the debtor in possession's use of cash collateral, the debtor in possession must segregate and account for all cash collateral in its possession. 11 U.S.C. § 363(c)(4).

13. Adequate protection may be required to protect the value of the creditor's interest in the property being used by the debtor in possession. This is especially important when there is a decrease in value of the property. The debtor may make periodic or lump sum cash payments, or provide an additional or replacement lien that will result in the creditor's property interest being adequately protected. 11 U.S.C. § 361.

14. The Debtor estimates that certain creditors may claim an interest in the cash and cash equivalent property of the Debtor, including certain of Debtor's accounts, instruments, general intangibles, fixtures, books and records pertaining to the foregoing, and all proceeds and receipts arising from the foregoing (collectively "the Pre-Petition Collateral").

15. Without prejudice to the rights of any other party, the Debtor disputes and denies, for the purposes of this Motion only, that the Debtor's various cash balances and instruments, together with revenues generated by business operations, or other disposition or collection of the Pre-Petition Collateral, constitute Pre-Petition Collateral or the

proceeds of the Pre-Petition Collateral. Thus, it is Debtor's position that only the specific items secured by perfected UCC liens and certain priority obligations are therefore the collateral of those certain cash collateral claimants under Bankruptcy Code §363(a) ("the Cash Collateral").

16. The Debtor expressly seeks authority to negotiate and deposit such checks and instruments into the Debtor's authorized Debtor in Possession account, without the necessity of endorsement by any joint payee, including any creditors. Copies of all such shall payments or transfers will be provided to creditors upon request, or otherwise through the filing of MOR reports, and all applicable deposits will be deemed Cash Collateral as a good-faith demonstration and assurance that any valid claims of Cash Collateral Claimants, if any, shall be adequately protected.

17. Certain creditors may be entitled, pursuant to Bankruptcy Code §§ 361 and 363(e), to adequate protection of their interests in the Pre-Petition Collateral to the extent of the diminution in value, including for: (i) the use of the Cash Collateral and (ii) the use of, or sale proceeds derived from, the Pre-Petition Collateral other than the Cash Collateral.

18. Here, the Debtor does not have sufficient available sources of working capital and financing to carry on business operations without the use of the Pre-Petition Collateral, including Cash Collateral. Among other things, granting this Motion will minimize disruption of the Debtor' business operations and permit Debtor to pay reasonable and necessary operating expenses, while maintaining business relationships with taxing authorities, utility providers, contractors, and key vendors. The use of the Cash Collateral is therefore of the utmost significance and importance to the preservation and maintenance of the going concern value of the Debtor bankruptcy estate, and will enhance

the prospects for a successful reorganization of the Debtor under Chapter 11 of the Bankruptcy Code.

19. Pursuant to Bankruptcy Code §§ 105, 361 and 363, the Parties are directed to act, and negotiate, in "good faith" in connection with the negotiation pertaining to Cash Collateral. Pursuant to same, Debtors note that the sole cash collateral claimant has demonstrated extreme willingness and good-naturedness when approached by the undersigned counsel to discuss the use of cash collateral. Counsel commends the parties for exemplifying good faith communications.

**APPLICABLE LAW AUTHORIZES DEBTOR TO USE CASH COLLATERAL**

20. What constitutes sufficient adequate protection is decided on a case-by-case basis. *See In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re SW.Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992). By adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re* 495 *Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996). Adequate protection can come in various forms, including payment of adequate protection fees, payment of interest, granting of replacement liens and administrative claims.

21. Debtor's counsel has searched the New Mexico Secretary of State website to locate

financing statements of record there, and based on the results of that search the Debtor asserts that there are no other perfected security interests in cash collateral, though there

are certain financing statements relating to equipment leases, or other non-cash collateral. In addition to the foregoing, the various forms of personally owned by this Debtor, including all such items serving as collateral and the proceeds from same, have a fair market value much higher than the estimated maximum amount of the Garvin Lien.

22. As of the Petition Date, Debtor owed approximately $262,912.27 to creditor Jeffrey A. Garvin, who appears (at least facially, and is accepted as true for the purposes of the forgoing motion without prejudice to the rights of the Debtor, including the right to object to or otherwise contest the validity and/or extent of the creditor's lien if so applicable) to be the only creditor with a filed, valid, and perfected lien upon the Debtor's Cash Collateral.

23. Garvin's lien purports to be collateralized by, and to be secured by, the following list of Cash Collateral:

> All accounts receivables, notes receivable and vehicles owned by Debtor.

## LIST OF ASSETS (CASH COLLATERAL)

Of the various forms of collateral securing the claims of Garvin some constitute:

24. "cash collateral" as that term is defined in 11 U.S.C. §363(a); as of the Petition Date, Debtor owned various assets including:,

> a. Total personal property and accruing A/R and notes receivable totaling approximately $774,912.27;

### I. EMERGENCY AUTHORITY TO USE CASH COLLATERAL

25. In the event of a pending emergency, such as an impending shortfall affecting the operation and maintenance of the estate, at or shortly after the commencement of the case, the court may authorize and schedule a preliminary hearing to a limited number of parties in interest, and the

hearing may be a preliminary hearing under section 363(c)(3), which provides that the hearing "shall be scheduled in accordance with the needs of the debtor" and that "the court shall act promptly" on any request for authorization for the use of cash collateral.

26. As a result of the commencement of Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, Debtor will be prohibited from paying or otherwise satisfying all pre-petition wages, including vacation and sick leave pay, and payroll taxes based on such wages (collectively, the "Pre-Petition Obligations"), and the checks, drafts, wire transfers, and direct deposit transfers issued and effected in respect of the Pre-Petition Obligations will be dishonored or rejected.

27. Accordingly, pursuant to §§ 105(a) and 363(b) of the Bankruptcy Code and the "necessity of payment" doctrine, Debtor seeks authority: (a) to pay the Pre-Petition Obligations that become due and owing during the pendency of this chapter 11 case and (b) to continue its practices, programs, and policies with respect to the Pre-Petition Obligations, as such practices, programs, and policies were in effect as of the Petition Date, including key vendors, contract employees, taxes, utilities and other essential operating expenses. As part of normal operations, Debtor seeks authorization to release titles to vehicles with outstanding notes that have been paid off or repossessed. Debtor seeks authorization for its banks and financial institutions to rely on the representations of Debtor as to which checks and fund transfer requests are issued and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following Debtor's instructions. At the same time, Debtor seeks authority to issue new post-petition checks, or effect new fund transfers, on account of the Pre-Petition Obligations to replace any pre-petition checks or fund transfer requests that may be dishonored or rejected.

28. Pursuant to Bankruptcy Code §§ 507(a)(4) and (a)(5), the claims of the Employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within

one-hundred-eighty (180) days before the Petition Date and claims against Debtor for contributions to employee benefit plans arising from services rendered within the 180 days before the Petition Date, are afforded unsecured priority status to the extent of $10,000.00 per wage earner. 11 U.S.C. §§ 507(a)(4) and (a)(5). Furthermore, in the event this Court determines such payment to be outside the ordinary course of Debtor's businesses, Bankruptcy Code § 363(b)(1) provides that the "[t]rustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code § 105(a) further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

29. Pursuant to Bankruptcy Rule 6003, the Court may grant the relief requested in the Motion within 20 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. *See In re Gen. Growth Props., Inc.* (2009, BC SD NY) 412 BR 609 (Relief granted was necessary to avoid immediate and irreparable harm to Debtor and their estates, as provided in Fed. R. Bankr. P. 6003. Among numerous other matters, Debtor were authorized, pursuant to 11 U.S.C. §§ 105(a), 363(c), to continue to manage their cash pursuant to cash management system maintained by Debtor prior to commencement date).

30. Debtor has made a good faith effort to estimate its weekly operating expenses during the Interim Cash Collateral Period ("Interim Budget"), which is attached hereto as **Exhibit 1**.

31. Debtor requests the Court's order granting it authority to use cash collateral as follows:

   a. For the actual and necessary business expenses, including those set out in **Exhibit**

**1,** attached hereto, not to exceed 10% more than the amount of each line item of the Budget for any given week;

b. To make any utility payments and deposits and adequate protection payments ordered by the Court pursuant to 11 U.S.C. §366;

c. To honor pre-petition checks and payments made in the ordinary course and to pay all taxes as they come due, both pre-and post-petition;

d. To pay U.S. Trustee fees when due, if any;

e. To pay such other expenses as Debtor and all cash collateral claimants may agree, in writing (including email) from time to time, or which the Court may order after notice to all cash collateral claimants, during the Emergency Cash Collateral Period, pursuant to the Court's equitable powers under 11 U.S.C. §105.

## II. ADEQUATE PROTECTION PROPOSED FOR CASH COLLATERAL CLAIMANTS

32. What constitutes sufficient adequate protection is decided on a case-by-case basis. *See In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re SW.Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992). By adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re* 495 *Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996). Adequate protection can come in various forms, including payment of adequate protection fees, payment of interest, granting of replacement liens and administrative claims.

33. Debtor believes that the interests of Cash Collateral Claimants can be protected herein in that:

a. Debtor proposes to provide post-petition, continuing and replacement liens on post- petition assets of the same sort that the Cash Collateral Claimant have pre-petition liens on, and the post-petition proceeds and profits thereof, to secure the use of cash collateral, with such liens on post-petition assets to be subject to any claims, defenses or avoiding powers that the pre-petition liens of Cash Collateral Claimant might be subject to, and with such post-petition liens having the same validity and priority as the liens existing at the time of the filing of the petition,

b. Debtor proposes to use cash collateral to insure, maintain and protect all forms of collateral securing the claims of Cash Collateral Claimant,

c. Debtor has, or promptly will open a Debtor-in-Possession account and any other accounts to facilitate the Cash Collateral Claimant's ability to monitor cash collateral during this proceeding.

d. Debtor proposes to make all aspects of the business operations open to inspection by Cash Collateral Claimant during normal business hours and on reasonable notice in order for the Cash Collateral Claimants to monitor the subject rental properties, and to make its books and records open to inspection to the creditors on reasonable request so long as it does not disrupt business operations.

34. Debtor will attempt to comply with such other measures as the Court may determine to be appropriate in order to protect the interests of the estate and the cash collateral claimants.

35. Debtor' emergency interim collateral budget proposes to use cash collateral for the purpose of maintaining business operations and for the purpose of administering the estate herein for the benefit of all creditors.

36. Debtor believes that the use of cash collateral on an interim basis will not diminish

the value of the estate of the value of assets securing the Cash Collateral Claimants.

37. Debtor proposes that any order entered herein shall not constitute the waiver or preclusion of any rights or claims of Cash Collateral Claimants to seek further relief with respect to the subject matter hereof, or with respect to any other matter, and that it likewise shall not constitute the waiver of preclusion of any rights of the Debtor.

## III. REQUEST FOR EMERGENCY HEARING AND ENTRY OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

38. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor request that the Court set a date for an Expedited Hearing on Debtor's Motion for Use of Cash Collateral that is as soon as practicable so as to prevent irreparable harm the Debtor' bankruptcy estates. Debtor do not need a hearing set on this day of filing, or the day after filing. Furthermore, Debtor do not seek an Order permitting any of the specifically enumerated provisions listed in the Honorable Judge Thuma's Cash Collateral guidance memorandum, where such provisions are directed to be disclosed in the Cash Collateral Motion and Order, located at http://nmb.uscourts.gov/sites/default/files/generalchambers/Cash_collateral_proc.pdf. Debtor has made a good faith effort to estimate its weekly operating expenses during the Emergency Cash Collateral Period ("Interim Budget"), which is attached hereto as **Exhibit 1**. Debtor has provided a proposed form of Order pertaining to the emergency use of Cash Collateral, which is attached hereto as **Exhibit 2**.

## IV. REQUEST FOR HEARING AND ENTRY OF FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

39. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor request that the Court set a date for the Final Hearing that is as soon as convenient for the Court and the parties, but in no event later than 45 days following the entry of the Interim Cash Collateral Order, and fix the time and date prior to the Final Hearing for parties to file objections to the Motion. Debtor has made a good faith effort to estimate its monthly operating expenses subsequent to the Emergency Cash Collateral Period ("Pre-Plan Budget"), which is attached hereto as **Exhibit 1**.

## NOTICE

40. The Debtor has provided notice of this Motion by electronic mail or facsimile and by overnight mail to:

   (a) the Office of the United States Trustee for the District of New Mexico;
   (b) Because no trustee, examiner, or statutory creditors' committee has been appointed in this Chapter 11 case, notice has been provided instead to the entities and parties listed on the Consolidated List of Creditors Holding the 20 Largest Claims pursuant to Bankruptcy Rule 1007(d);
   (c) The Creditor known, or believed to be, an interested party holding secured claims, or otherwise, pursuant to F.R.Bank.P. 7004(h);
   (d) Debtor's counsel shall make reasonable efforts to contact via telephone the parties (or such parties' counsel, if known) included within paragraphs (a) and (b), above; and,
   (e) Debtor respectfully submits that no further notice is necessary.

## RELIEF REQUESTED

41. By this Motion, Debtor requests that, pursuant to Bankruptcy Code §§ 105(a) and 363(b), the Court authorize Debtor to pay the Pre-Petition Obligations (as defined herein and described above).

## NO PRIOR MOTIONS

42. No previous request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, Debtor(s) request that the Court enter an order authorizing the interim use of cash collateral, substantially in the form attached hereto as **Exhibit 2**, provided pursuant to Rule 4001(b) Fed.R.Bank.P., granting the relief requested herein and granting such other and further relief as the Court deems appropriate. Debtor(s) request that the Court schedule a hearing for review and entry of a final order authorizing the ongoing use of cash collateral as requested and pursuant to **Exhibit 2** ("Pre-Plan Budget"), granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Respectfully Submitted:

ALBUQUERQUE BUSINESS LAW, P.C.

*/s/ James T. Burns "electronically submitted"*
James T. Burns, Esq.
Counsel for Debtor
1801 Rio Grande Blvd. Suite B
Albuquerque, NM 87104
(505) 246-2878
(505) 246-0900 – facsimile
james@abqbizlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2017, a true and correct copy of the foregoing pleading was filed electronically with the Bankruptcy Court in accordance with the CM/ECF system filing procedures for providing electronic service to the entire creditor matrix identified with the Bankruptcy Court, courtesy copies were emailed to the U.S. Trustee, and in addition, service was made by first class mail, to the following parties of the pleadings, exhibits, notice of hearing, and attachments to same.

*/s/ James T. Burns*
James T. Burns

U.S. Trustee
ustpregion20.aq.ecf@usdoj.gov
Alice.N.Page@usdoj.gov